New Jersey Department of Labor,
Workmen's Compensation Bureau.

ADELEE E. MILLER, PETITIONER, v. CHARLES F. GUYON,
INC., RESPONDENT.

Decided May 20, 1941.

For the petitioner, *Nathan Rabinowitz* and *Ernest Tischler*.

For the respondent, *Stanley V. Phares*.

\*       \*       \*       \*       \*       \*       \*

The only issue, \* \* \* was whether the petitioner was a dependent and entitled to compensation for the death of the said Mathew Miller.

The petitioner, Adelee E. Miller, testified at length and from her testimony there seems to be little doubt but what she was married to the deceased on March 26th, 1926, in New York City. They lived together as man and wife at various places in and around the City of Passaic. Apparently this continued up until June of 1930. At that time various arguments relative to financial conditions and domestic conditions terminated in physical violence being rendered to the petitioner by her husband. After this argument the deceased left the petitioner and never lived with her again after that date.

Subsequent to this time the petitioner lived at various places and obtained domestic work and she testified that she would see her husband once in a while, and that on occasion she would try to persuade him to come back, but the deceased never offered to take her back to live with him. She testified that she, at one time, consulted a lawyer to get some support

from her husband, but nothing resulted from this effort. The petitioner testified that the deceased would give her a little money occasionally when she would see him. She said that he, during this time, did not really support her but occasionally he would give her something to help her out. The petitioner testified that the last time she spoke to her husband about trying to get him to make up and resume their home life was in 1934. The petitioner testified on cross-examination that the last time she saw her husband alive was in 1936, and at that time she did not ask him to return and live with her. It was stipulated that the deceased died on November 19th, 1938.

The petitioner testified that she went to Rochester in the latter part of 1937 and stayed there until the latter part of 1939, when she moved to Virginia. The petitioner admitted that when she went to live in Rochester, New York, she lived with another man by the name of Rev. Christopher Leath, and that she and the Reverend held themselves out to be husband ánd wife .in that community and in the church where the Reverend was officiating. All the members of the church knew them as husband and wife and this situation continued up to the latter part of 1939 when they moved to Virginia together, and that all the members of the church in Virginia know them as Mr. and Mrs. Leath, and the petitioner admits having lived with the Rev. Leath since the later part of 1937 as husband and wife, both in Rochester and in Virginia. Apparently the only support the petitioner ever received from the deceased after their quarrel was a dollar or two occasionally when the petitioner would meet him on the street and ask him for money, and the last time that he gave her any money was in 1934.

Having carefully considered the petitioner's testimony I cannot concede to counsel's argument that, despite her own wrongdoing she is a lawful dependent of the deceased and therefore entitled to compensation. I have in mind the case of *Alexander* v. *Cunningham Roofing Co.,* 124 *N. J. L.* 390; 11 *Atl. Rep.* (2d) 41, but I feel that the facts in the present case go far beyond those of the Alexander case. In the Alexander case certain prerequisites were laid down for a widow

to meet before she is entitled to compensation, if, at the time of her husband's death, she was separated from him. One of these prerequisites is that the widow diligently seek to force her husband to support her, and another is that she remain in fact dependent upon him and not assert her independence. In the present case I do not feel that the petitioner has met either of these prerequisites. From her testimony I cannot find that she, at any time, strenuously sought support from her deceased husband after he left her in 1930. She was working and evidently never asked him for money except when she would happen to meet him on the street, and although her testimony is that at one time she consulted a lawyer, so far as I can gather from the testimony she went no further than this. In the second place, I feel that by her conduct she has clearly and unequivocably evidenced her independence of her husband. I cannot conceive of any other acts that would more definitely show an intention of independence than the act of living with another man. This relationship evidently started in 1937, before the husband's death, and continued up to the present time. Therefore, I feel that at the time of the deceased's death the petitioner was not, in fact or in law, a dependent of her husband. In addition, thereto, the testimony clearly indicates that since 1937 the petitioner and the Rev. Christopher Leath considered and held themselves out as husband and wife. There was evidently no ceremonial marriage in this case and the only thing that would prevent the existence of a common law marriage would be a statutory ban or the continued good health of the first spouse. I understand that New York State by statute has abolished common law marriages, and if such were so, then, of course, the petitioner, by living with this other man as husband and wife in Rochester could not have contracted a common law marriage there, despite the fact that her husband died in November of 1938. However, it seems clear to me that she had the clear intention of being the Rev. Christopher Leath's wife, and holding herself out as same, and that when they moved to Virginia, the common law marriage having no impediment in its way, then ripened into being in law. Therefore, it would seem that if the petitioner was a dependent at

the time of her husband's death the dependency would no sooner come into being than it would be defeated by re-marriage.

However, regardless of the question as to whether a common law marriage existed in this case, I do not feel from the testimony and evidence produced before me that the petitioner was, at the time of her husband's death, a dependent either in fact or in law, and I therefore am forced to dismiss the petition filed.

JOHN J. STAHL,
*Deputy Commissioner.*